J-A01017-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF: A.T.I., A MINOR | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: C.D.M., MOTHER | : : : : : : | |
| | : | No. 2690 EDA 2019 |

Appeal from the Order Entered August 16, 2019
In the Court of Common Pleas of Northampton County Orphans' Court at
No(s):  No. 2019-00015

BEFORE:   NICHOLS, J., MURRAY, J., and COLINS, J.[*]

MEMORANDUM BY MURRAY, J.:            **FILED FEBRUARY 19, 2020**

C.D.M. (Mother) appeals from the order denying her petition to involuntarily terminate the parental rights of J.A.I. (Father), to their minor daughter, A.T.I. (born December 2008) (Child).  We affirm.

The trial court summarized the factual and procedural history of this case as follows:

> [Child], born [in December 2008], is presently 10 years of age. She currently resides in Bath[, Northampton County, Pennsylvania], with Mother and Mother's paramour, [S.K., Jr. (Paramour)].  Mother and [Paramour] have been in a relationship for the past nine years.  In addition to the [c]hild of the parties herein, Mother and [Paramour] are also raising a child of their own union.  [Paramour] wishes to adopt [Child].  Father also currently resides in Bath, with his paramour, his paramour's child, and the child of their union.

_____

[*] Retired Senior Judge assigned to the Superior Court.

From the time [Child] was under one year of age until she was approximately six years of age, she was in the primary custody of Father. Mother relinquished physical custody of [Child] in her infancy to Father in order to pursue a military career, though this intention never came to fruition. During this time, Mother had little contact with [Child] for several years, until [Child] was approximately five years of age, when regular contact with Mother resumed. [Child] remained in Father's primary custody.

In August 2014, Father was involved in a serious accident while at work, resulting in severe burns to his body. As a result, Father was unable to work and eventually found himself both unemployed and homeless, without any benefits because he had been self-employed. When Father found himself and [Child] living in close quarters at the home of an acquaintance, Father became concerned about the safety of [Child] and decided the best interests of [Child] were not being served and that it would be best if she went to live with Mother for a period of time until he was able to get back on his feet with a job and housing. Mother agreed to take primary custody of [Child], and the parties agreed that they would assume a 50/50 custodial schedule when Father's circumstances improved. Unbeknownst to Father until months or perhaps years later, Mother obtained an emergency custody Order on September 2, 2014[,] granting her primary legal and physical custody of [Child].

Father visited with [Child] sporadically after relinquishing physical custody to Mother. His last visit with Child was in May 2015. After May 2015, Father attempted to reach Mother and [Child] via telephone, but Mother did not return Father's calls and eventually changed her telephone number without notifying Father of the change. Mother also changed residences at some point in the months after cutting off telephone contact with Father. While Mother did notify the court of her change of address for purposes of the custody litigation on February 3, 2016, she did not notify Father. When Father learned that Mother had moved, he attempted to locate her and [Child] by contacting Mother's mother. [Child]'s maternal grandmother related that she, too, was unaware of Mother's whereabouts. Father being *pro se* in the custody litigation, we do not believe it would be reasonable to expect him to be aware that he might learn Mother's new address by consulting the court file. Father testified at trial that after he realized Mother was making [Child] unavailable to him, he wanted to wait until he was able to improve his circumstances to provide

a good life for [Child] before continuing to pursue his custodial rights in [c]ourt, and that he did not want to continue to pursue locating Mother out of fear of being accused of harassment.

In March 2018, Father felt that he was in a better position to parent [Child] and filed a counseled Petition for Modification. A custody conference was scheduled for April 19, 2018, at which Father was not present as a result of his counsel's failure to inform him of same. On June 6, 2018, Father's counsel withdrew without notice to Father. On June 11, 2018, an Order of Court was entered dismissing Father's petition after no one appeared for trial. Father credibly related that he was unaware of the scheduled trial because of his attorney's failure to inform him of same. At present, Father has stable employment and housing and is in a stable relationship with his paramour, to whom he is engaged and with whom he is raising two children. He is now ready and willing to parent [Child] and wishes to regain a relationship with her. He has created a bedroom for [Child] in his home, and has purchased gifts for her for all of the holidays and birthdays that they have been apart.

**See** Order of the Court, 8/16/19, at 2-5.

On February 14, 2019, Mother initiated the underlying action by filing a petition seeking to involuntarily terminate Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1) and (b). The court held a hearing on July 17, 2019. Mother and Father both testified. Additionally, Father presented the testimony of K.D., his paramour. At the hearing, Child was represented by Lisa M. Spitale, Esquire, guardian *ad litem*.[1] The court denied the petition on August 16, 2019.

---

[1] In her argument before the court, Attorney Spitale averred that there was no conflict between Child's best and legal interests. **See In re Adoption of L.B.M.**, 161 A.3d 172, 183 (Pa. 2017) (plurality); **In re T.S.**, 192 A.3d 1080, 1092-93 (Pa. 2018) (holding that a GAL may serve as legal counsel where there is no conflict between Child's best and legal interests). Before this Court, Attorney Spitale has not filed a brief, but a letter joining Mother's brief requesting that this Court reverse the order denying the termination petition.

Thereafter, Mother filed a motion seeking to reopen the record and for reconsideration of the court's denial of her petition, seeking to introduce the testimony of Charles E. Dutko, Jr., Esquire, Father's custody attorney. The court denied the motion on September 14, 2019.

Mother timely filed her notice of appeal and concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

On appeal, Mother raises the following issues for our review:

A. Should [Father's] parental rights be terminated in that he refused or failed to perform parental duties for a period of at least six months immediately preceding the filing of the termination petition?

B. Should Father's [t]estimony that he was waiting for a more suitable time excuse his failure to perform parental duties?

C. Should the record be reopened to admit the testimony of Father's custody attorney and to admit the records from that custody case?

Mother's Brief at 4 (unnecessary capitalization and suggested answers omitted).

We review cases involving the termination of parental rights according to the following:

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously

emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotations omitted).

In addition, termination requires a bifurcated analysis:

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

The relevant subsections of 23 Pa.C.S.A. § 2511 provide:

**(a)** **General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

\*\*\*

**(b) Other considerations.**--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any

- 5 -

efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511.

With regard to petitions filed under Section 2511(a)(1),

[t]o satisfy the requirements of Section 2511(a)(1), the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties. In addition,

> Section 2511 does not require that the parent demonstrate both a settled purpose of relinquishing parental claim to a child and refusal or failure to perform parental duties. Accordingly, parental rights may be terminated pursuant to Section 2511(a)(1) if the parent either demonstrates a settled purpose of relinquishing parental claim to a child or fails to perform parental duties.

> Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

*In re Z.S.W.*, 946 A.2d 726, 730 (Pa. Super. 2008) (internal citations omitted).

As to the six month period, this Court has stated:

[I]t is the six months immediately preceding the filing of the petition that is most critical to our analysis. However, the trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provisions, but instead consider the individual circumstances of each case.

*In re D.J.S.*, 737 A.2d 283, 286 (Pa. Super. 1999) (citations omitted). The court must "examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his or her parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination." *In re B., N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004), *appeal denied*, 872 A.2d 1200 (Pa. 2005) (citation omitted).

> Regarding the definition of "parental duties," this Court has stated:
>
> There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this Court has held that the parental obligation is a positive duty which requires affirmative performance.
>
> This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child.
>
> Because a child needs more than a benefactor, parental duty requires that a parent exert himself to take and maintain a place of importance in the child's life.
>
> Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with . . . her physical and emotional needs.

*In re B., N.M.*, 856 A.2d at 855 (citations omitted).

We address Mother's first two issues concerning Section 2511(a) together. Mother argues that Father has not had communication with Child since May 2015, and has done nothing meaningful to perform his parental duties. *See* Mother's Brief at 14. Mother argues that Father did not make any attempt to discover Mother's address, and his sole attempt to re-establish a relationship with Child was the filing of a custody modification petition in 2018. *Id.* Mother argues that Father's excuses, including his claim that his attorney did not communicate with him, and that he was waiting for a more suitable time to resume a relationship with Child, are unbelievable. *Id.* at 14-18.

However, the trial court opined:

The [c]ourt finds it commendable that Father recognized the inappropriateness of his living situation for a young girl and reached out to Mother to provide [Child] with a more suitable living arrangement. While Father had an affirmative duty to maintain his relationship with [Child] during the time that he was working to get back on his feet, his best attempts to do so were thwarted by Mother. In considering a parent's absence from a child's life, we "must consider the non-custodial parent's explanation, if any, for the apparent neglect [of parental duty], including situations in which a custodial parent has deliberately created obstacles and has by devious means erected barriers intended to impede free communication and regular association between the non-custodial parent and his or her child." *In re B., N.M.*, [856 A.2d 847,] 855-856. It is clear to the [c]ourt in this case that Mother, while not taking extreme measures to hide [Child] from Father, did take actions to thwart the relationship between [Child] and Father by making herself and [Child] disappear from Father's life. With respect to Father's attempts to preserve his relationship with [Child], his "performance must be measured in light of what would be expected of an individual in

- 8 -

circumstances which the parent under examination finds [himself]." ***In re Adoption of Sabrina***, 47 A.2d 624, 627 (Pa. Super. 1984). Under the circumstances of the case, we believe that Father did as much as he was capable of doing in order to maintain a relationship with [Child]. Mother clearly worked to interfere with the relationship between Father and [Child], taking advantage of Father's circumstances to shut Father out of [Child]'s life. Mother changed her address without directly notifying Father, and even cut off contact with her own mother, making it more difficult for Father to locate her and [Child]. We find it quite telling that Mother testified at trial that she did not think that it was important for Father to have a role in [Child]'s life.

We accordingly find that Father exercised reasonable firmness under the circumstances in maintaining a relationship with [Child], and thus find that Mother has failed to meet her burden of proving, by clear and convincing evidence, that Father's parental rights should be terminated. ***In re G.P.-R.***, 851 A.2d 967, 976 (Pa. Super. 2004).

Trial Court Opinion, 8/16/19, at 5-7.

The court's findings are supported by the record. Mother's argument is essentially a challenge to the weight the trial court placed upon certain evidence, and a challenge to the trial court's credibility determinations. It is well-settled that this Court may not re-weigh evidence. ***T.S.M.***, 71 A.3d at 267. Thus, consistent with the foregoing, we discern no error in the trial court's determination that Mother failed to prove by clear and convincing evidence that termination was warranted. ***B., N.M.***, 856 A.2d at 855.

In Mother's second issue, she contends that the court erred in denying her request to open the record, admit the testimony of Father's attorney, and admit custody records. ***See*** Mother's Brief at 21-22. Mother argues that it was "unreasonable" for the trial court to credit Father's testimony about his attorney's failure to communicate with him. ***Id.*** Mother cites generally to law

regarding post-trial motions and the admission of post-trial evidence in civil and criminal cases, but does not cite to cases involving orphans' court, domestic relations, or involuntary termination of parental rights. *Id.* at 22.

The trial court rebutted Mother's claim as follows:

Mother asserts no legal authority for an entitlement to open the record – nor is the [c]ourt aware of any such authority – but merely argues that she should have been permitted to do so after the issuance of our August 16, 2019 Order, to offer evidence contrary to Father's testimony. If Mother was surprised by Father's testimony and wished to offer evidence in rebuttal, she was certainly aware of his testimony prior to the conclusion of the trial and could have requested an adjournment at that time in order to gather the necessary evidence, but did not do so. Mother had her day in [c]ourt to present all of the evidence she felt that she needed to present in order to prevail on her petition, and is not entitled to reopen the record simply because she does not agree with the [c]ourt's conclusion. Notably, Mother is not forever foreclosed from seeking termination of Father's parental rights, and we specifically noted that she may file a new petition after one year if Father continued to be absent from [Child's] life.

Mother's apparent position that her rights have somehow been violated or that a great injustice has been done by our refusal to terminate Father's parental rights at this time plainly echoes her actions in thwarting Father's attempts to see [Child] over the last four years – and supports our conclusion that those actions were intentional – as well as her statement at trial that Father did not have an important role to fulfill in [Child's] life, and is entirely misplaced. Nothing is lost by permitting Father a modicum of additional time to reconnect with [Child] and perform parental duties, now that he has recovered physically and financially and has retained capable counsel. Conversely, much could be lost by terminating Father's parental rights in a case where the record is far from clear that such action is warranted.

Trial Court Opinion, 9/16/19, at 2-4.

- 10 -

Again, we see no error in the trial court's determination, and thus conclude that Mother's issue regarding her request to re-open the record does not merit relief. ***T.S.M.***, 71 A.3d at 267.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/19/20